IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TYRICK WILLIAMS,** | : | |
| **Plaintiff** | : | No. 1:24-cv-01078 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| **J. RIVELLO, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Before the Court are pro se Plaintiff's application for leave to proceed in forma pauperis and civil rights complaint filed under 42 U.S.C. § 1983. For the reasons set forth below, the Court will grant Plaintiff's in forma pauperis application and dismiss the complaint for failure to state a claim with prejudice in part and without prejudice in part.

**I.  BACKGROUND**

Pro se Plaintiff Tyrick Williams ("Williams"), a convicted and sentenced state prisoner, commenced this action by filing a complaint against Defendants J. Rivello ("Rivello"), the Superintendent of Pennsylvania State Correctional Institution Huntingdon ("SCI Huntingdon"), and the "SCI Huntingdon Medical Dept" ("Medical Department") on June 28, 2024.[1] (Doc. No. 1.) In the complaint, Williams alleges that while he was in a cell at SCI Huntingdon on July 25, 2022, he suffered a seizure, causing him to fall "onto a [sic] illegal stinger bucket," to which

---

[1] The federal "prisoner mailbox rule" provides that a pro se prisoner's submission is deemed filed "at the time [the prisoner] delivered it to the prison authorities for forwarding to the court clerk." See Houston v. Lack, 487 U.S. 266, 276 (1988). Unfortunately, when filing his complaint, Williams did not include a declaration stating when he delivered the complaint to prison authorities for mailing to the Clerk of Court. Nonetheless, the envelope containing the complaint is postmarked June 28, 2024. (Doc. No. 1 at 7.) As such, the Court uses June 28, 2024, as the complaint's filing date, even though the Clerk of Court did not docket it until July 1, 2024. Cf. Fed. R. App. P. 4(c)(1)(A)(ii) (providing that evidence such as a postmark may establish the date of filing of a notice of appeal by a prisoner).

another inmate had attached electricity to make hot water.² See (id.). Due to falling onto the "stinger bucket," Williams received second/third degree burns on the left side of his body, extending from his shoulder to his chest. See (id.). These burns resulted in Williams having "life long [sic] scars which [he] cannot get rid of," and caused him to "suffer physically and mentally." See (id.).

Williams avers his injuries were caused by Rivello "& Security" "not taking care of" safety issues at SCI Huntingdon. See (id.). He also avers that the Medical Department displayed deliberate indifference to his serious medical needs when "they left [him] laying in water that had an electric current coming [in]to it." See (id.). The Medical Department's deliberate indifference resulted in an outside hospital having to treat Williams for his injuries. (Id.)

Based on these allegations, Williams asserts claims under 42 U.S.C. § 1983 against Defendants in their official and individual capacities for violating his Eighth Amendment right to be free from cruel and unusual punishment. (Id. at 1, 5.) He also purports to assert state-law tort claims under the Federal Torts Claims Act, 28 U.S.C. § 1346 ("FTCA"), for the "tort[s] of intentional, negligence and strict liability." See (id. at 1, 5). For relief, Williams requests nominal damages, compensatory damages of $1 million, punitive damages of $1 million, court fees, "lawyer fees," and "a full medical check-up." See (id. at 5).

---

² It appears that a "stinger" or "stinger bucket" is "an improvised electrical device" found in prisons. See Bivins v. Williams, No. 22-1791, 2023 WL 180051, at *1 (7th Cir. Jan. 13, 2023) (unpublished); see also Calipo v. Wolf, No. 18-cv-00320, 2019 WL 6879570, at *6 (W.D. Pa. Nov. 15, 2019) (describing plaintiff's allegation that "[d]ue to the lack of microwaves [in the prison], inmates are forced to cook with illegal and dangerous 'stingers' – i.e., electrical cords placed directly in water"), report and recommendation adopted, 2019 WL 6877181 (W.D. Pa. Dec. 17, 2019); Sierra v. N.J. Dep't of Corr., No. A-4904-13T2, 2015 WL 3887084, at *2 (N.J. Super. Ct. App. Div. June 25, 2015) ("A stinger is a heated immersion coil used to heat water . . . .").

In filing his complaint, Williams failed to either remit the fees to commence this case or apply for leave to proceed in forma pauperis. As such, an Administrative Order issued on July 1, 2024, requiring him to either remit the fees or file an application for leave to proceed in forma pauperis within thirty (30) days or risk dismissal of this action. (Doc. No. 4.) Williams timely complied with the Administrative Order by submitting an application for leave to proceed in forma pauperis ("IFP Application") and certified prisoner trust fund account statement, both of which were docketed on July 8, 2024. (Doc. Nos. 5, 6.) The Court will first address the IFP Application and screen the complaint as required by 28 U.S.C. §§ 1915A and 1915(e)(2).

## II.     LEGAL STANDARDS

### A.     Applications for Leave to Proceed in Forma Pauperis

Under 28 U.S.C. § 1915(a)(1), the Court may allow a plaintiff to commence a civil case "without prepayment of fees or security therefor," if the plaintiff "submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor."[3] See id. This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." Neitzke v. Williams, 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. [Deutsch v. United States, 67 F.3d 1080, 1084 (3d Cir. 1995)]. Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court in forma pauperis by filing in good faith an affidavit stating, among other things, that [they are] unable to pay the costs of the lawsuit. Neitzke, 490 U.S. at 324, 109 S.Ct. 1827.

See Douris, 293 F. App'x at 131–32 (footnote omitted).

---

[3] While the Court recognizes that Williams is incarcerated, "[t]he reference to prisoners in § 1915(a)(1) appears to be a mistake. In forma pauperis status is afforded to all indigent persons, not just prisoners." See Douris v. Middletown Twp., 293 F. App'x 130, 132 n.1 (3d Cir. 2008) (unpublished).

3

A litigant can show that they are unable to pay the costs of the lawsuit "based on a showing of indigence." See Deutsch, 67 F.3d at 1084 n.5. The Third Circuit Court of Appeals has not defined what it means to be indigent; nevertheless, "[a] plaintiff need not 'be absolutely destitute to enjoy the benefit of the statute.'" See Mauro v. N.J. Supreme Ct. Case No. 56,900, 238 F. App'x 791, 793 (3d Cir. 2007) (unpublished) (quoting Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 339 (1948)). Some district courts have explained that all a litigant needs to show is that because of their poverty, they cannot afford to pay for the costs of the litigation and provide themselves with the necessities of life. See, e.g., Rewolinski v. Morgan, 896 F. Supp. 879, 880 (E.D. Wis. 1995) ("An affidavit demonstrating that the petitioner cannot, because of his poverty, provide himself and any dependents with the necessities of life is sufficient."); Jones v. State, 893 F. Supp. 643, 646 (E.D. Tex. 1995) ("An affidavit to proceed in forma pauperis is sufficient if it states that one cannot, because of poverty, afford to pay for the costs of litigation and still provide for him- or herself and any dependents.").

  **B.**  **Screening the Complaint Under 28 U.S.C. §§ 1915A and 1915(e)(2)**

Under 28 U.S.C. § 1915A, this Court must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." See 28 U.S.C. § 1915A(a). If a complaint fails to state a claim upon which relief may be granted, the Court must dismiss the complaint. See id. § 1915A(b)(1). The Court has a similar screening obligation with respect to actions filed by prisoners proceeding in forma pauperis. See id. § 1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . .").

In reviewing legal claims under Sections 1915A(b) or 1915(e)(2), the Court applies the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See, e.g., Smithson v. Koons, No. 15-cv-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1) [and] § 1915(e)(2)(B)(ii) . . . is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."), report and recommendation adopted, 2017 WL 3008559 (M.D. Pa. July 14, 2017); Mitchell v. Dodrill, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when reviewing a complaint for possible dismissal pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)"). To avoid dismissal under Rule 12(b)(6), a plaintiff must set out "sufficient factual matter" in the complaint to show that their claims are facially plausible. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). When evaluating the plausibility of a complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff. See id.; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). However, the Court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a district court's screening under Sections 1915A and 1915(e)(2). See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).

In addition, in the specific context of pro se prisoner litigation, the Court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Higgs v. Att'y Gen., 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a pro se litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)).  Therefore, a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers."  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting Estelle, 429 U.S. at 106).  This means the court must "remain flexible, especially 'when dealing with imprisoned pro se litigants . . . .'"  See Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021) (quoting Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244–45 (3d Cir. 2013))).

Additionally, when construing a pro se complaint, the court will "apply the relevant legal principle even when the complaint has failed to name it."  See Mala, 704 F.3d at 244.  However, pro se litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'"  See Vogt, 8 F.4th at 185 (quoting Mala, 704 F.3d at 245).

C.  **Section 1983**

Section 1983 is the statutory vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983.  This statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

See id.  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors."  See Pappas v. City of

Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002)). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

## III. DISCUSSION

### A. The IFP Application

After reviewing the IFP Application as well as Williams's certified prison trust fund account statement, it appears that Williams is unable to pre-pay the costs of this civil rights action. Therefore, the Court will grant the IFP Application and allow him to proceed in forma pauperis.[4]

### B. Screening of the Complaint

#### 1. FTCA Claims

Williams purports to assert tort claims against Defendants under the FTCA. (Doc. No. 1 at 5.) The FTCA acts as a waiver of the United States' sovereign immunity for suits against it,

> for injury[,] . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

See 28 U.S.C. § 1346(b)(1). "Thus, under the FTCA, federal inmates may sue the United States for injuries while incarcerated." Zayas-Cintron v. Hicks, No. 23-cv-01081, 2024 WL 345489, at

---

[4] However, because Williams is a prisoner, he is advised that he will be obligated to pay the filing fee in installments in accordance with the PLRA, regardless of the outcome of this action. See 28 U.S.C. § 1915(b).

7

*5 (M.D. Pa. Jan. 30, 2024) (emphasis added) (citing 28 U.S.C. § 2674; Priovolos v. FBI, 632 F. App'x 58, 60 (3d Cir. 2015) (unpublished)).  The United States is the only proper defendant for such a claim.  See CNA v. United States, 535 F.3d 132, 138 n.2 (3d Cir. 2008) ("The Government is the only proper defendant in a case brought under the FTCA.").

Here, Williams may not proceed with his purported FTCA claim against Defendants because: (1) "he is a state inmate in the custody of the Pennsylvania Department of Corrections"; (2) "[h]is claims are based on alleged wrongdoing by Defendants," a Pennsylvania state employee and a Pennsylvania state entity; (3) "Defendants were not employees or agents of the United States during the period relevant to this lawsuit"; (4) "he is not a federal inmate"; and (5) "he has not named the United States as a defendant in this action."  See Zayas-Cintron, 2024 WL 345489, at *5.  Therefore, the Court will dismiss Williams's FTCA claims.

### 2. Section 1983 Claim Against the Medical Department

Williams asserts an Eighth Amendment damages claim for deliberate indifference to his serious medical needs against the Medical Department.  He cannot maintain such a claim because the Medical Department has Eleventh Amendment immunity and is not considered a "person" amenable to suit under Section 1983.

Regarding Eleventh Amendment immunity, "[a]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."  See Kentucky v. Graham, 473 U.S. 159, 169 (1985); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99–100 (1984) (explaining that Eleventh Amendment renders states and their agencies immune from suits in federal court seeking monetary damages); see also Lombardo v. Pa., Dep't of Pub. Welfare, 540 F.3d 190, 194 (3d Cir. 2008) (explaining that "[t]he immunity of States from suit in the federal courts is a fundamental aspect of state sovereignty").

The Commonwealth of Pennsylvania has not waived that immunity. See 42 Pa. C.S. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."); see also Lavia v. Pa. Dep't of Corr., 224 F.3d 190, 195 (3d Cir. 2000) (explaining that Pennsylvania has not waived Eleventh Amendment immunity). Moreover, Congress did not abrogate the States' Eleventh Amendment immunity in enacting Section 1983. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989) (stating that "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties" (citation omitted)); Quern v. Jordan, 440 U.S. 332, 341 (1979) (explaining that Section 1983 does not override the States' Eleventh Amendment immunity).

This Eleventh Amendment immunity extends to all agencies or departments "having no existence apart from the state." See Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981) (citation omitted). As such, the Pennsylvania Department of Corrections ("DOC") and its institutions, such as SCI Huntingdon, as well as SCI Huntingdon's Medical Department, are entitled to the same Eleventh Amendment immunity that the Commonwealth enjoys. See 71 P.S. § 61(a) (listing Department of Corrections as Commonwealth agency); Bertalan v. SCI Graterford State Prison, No. 18-cv-00069, 2018 WL 491007, at *1 (E.D. Pa. Jan. 18, 2018) (explaining that state correctional institution's medical department was entitled to Eleventh Amendment immunity because it is essentially an "arm[ ] of the Commonwealth").

In addition to the Medical Department's Eleventh Amendment immunity to Williams' claims for damages, it is not considered a "person" for purposes of Section 1983 and, therefore, is not amenable to suit under Section 1983. See 42 U.S.C. § 1983 (indicating that it applies only

to "persons" acting under color of law who violate Constitution); Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973) (concluding that a state prison medical department could not be sued under Section 1983 since it is not a "person"); Gerholt v. Wetzel, 858 F. App'x 32, 34 (3d Cir. 2021) (unpublished) (citing Fischer and concluding same). Accordingly, the Court will dismiss Williams' Section 1983 claim against SCI Huntingdon's Medical Department.

### 3. Section 1983 Official-Capacity Claim Against Rivello

Williams asserts a Section 1983 monetary damages claim for an Eighth Amendment violation against Rivello in his official capacity as Superintendent of SCI Huntington. (Doc. No. 1 at 1, 5.) Williams may not maintain his Section 1983 claim against Rivello in his official capacity because Rivello is entitled to Eleventh Amendment immunity from this claim. In this regard, the Eleventh Amendment also bars claims against state officials acting in their official capacities because such claims are considered to be claims against the employing government agency. See Will, 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself."); A.W. v. Jersey City Pub. Schs., 341 F.3d 234, 238 (3d Cir. 2003) (explaining that Eleventh Amendment immunity "extends to state agencies as well as state officials sued in their official capacities for monetary damages").[5] Therefore, the Court will dismiss Williams's Section 1983 Eighth Amendment monetary damages claim against Rivello in his official capacity.

---

[5] However, "state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts." See Hafer v. Melo, 502 U.S. 21, 31 (1991).

### 4.     Section 1983 Individual-Capacity Claim Against Rivello

Williams's Section 1983 Eighth Amendment individual-capacity claim against Rivello is limited to a single allegation, i.e., that his injuries were caused by Rivello "& Security" failing to address "safety issue's [sic] in SCI Huntingdon." See (Doc. No. 1 at 4). It is unclear through this allegation if Williams alleges that Rivello knew about the "stinger bucket" in his cell and failed to do anything about it or just did not do anything about safety issues generally. Either way, this sole allegation is insufficient to state a plausible Section 1983 claim against Rivello.

In general, "a defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Additionally, to the extent that Williams attempts to hold Rivello liable simply because he is the Superintendent at SCI Huntingdon, he cannot do so because liability under Section 1983 cannot be predicated on respondeat superior. See Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 227 (3d Cir. 2015) ("[Plaintiff] cannot predicate liability on her § 1983 claims on a respondeat superior basis." (citing Rode, 845 F.2d at 1207) (emphasis omitted)); Robinson v. Delbalso, No. 22-2378, 2022 WL 17248100, at *2 (3d Cir. Nov. 28, 2022) (unpublished) ("We agree with the District Court that Robinson's second amended complaint did not state a plausible claim for relief. First, he failed to allege the defendants' personal involvement, and he cannot predicate liability on his § 1983 claims on a respondeat superior basis." (internal citations omitted)). Instead, if Williams is seeking to hold Rivello liable for unconstitutional acts by his subordinates, Williams's allegations must satisfy one of two theories of supervisory liability: first, "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm[;]" and second, "a

11

supervisor may be personally liable under § 1983 if [they] participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in [their] subordinates' violations." See A.M. ex rel. J.M.K. v. Luzerne County Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted); Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014) (explaining requirements for supervisory liability in section 1983 claim and describing "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates"), rev'd on other grounds sub nom., Taylor v. Barkes, 575 U.S. 822 (2015).

To allege a plausible claim for supervisory liability under the first theory—the policy-and-practice strand of supervisory liability—a plaintiff such as Williams must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure. Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury.

See Chavarriaga, 806 F.3d at 227 (quoting Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2001)).  For the second theory of supervisory liability—participating in, directing others to, or knowledge and acquiescence of constitutional violation—generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. See Saisi v. Murray, 822 F. App'x 47, 48 (3d Cir. 2020) (unpublished) ("Saisi asserted that some defendants were in charge of agencies that allowed this to happen, and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held

12

liable 'simply because of [their] position as the head of the [agency].'" (quoting Evancho v. Fisher, 423 F.3d 347, 354 (3d Cir. 2005))); Zigler v. Warren, No. 21-cv-19474, 2022 WL 903383, at *2 (D.N.J. Mar. 28, 2022) ("In simpler terms, a supervisor is not liable for the unconstitutional conduct of his employees solely because he is a supervisor."). Additionally, "[a]lthough a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." See Chavarriaga, 806 F.3d at 222 (citing Baker v. Monroe Twp., 50 F.3d 1186, 1194 (3d Cir. 1995); Rode, 845 F.2d at 1201 n.6).

In this case, Williams's allegations in the complaint do not state a plausible supervisory liability claim under either of the two theories described above. He does not include any allegations relating to a custom, policy, or practice in the complaint. Furthermore, the sole allegation in the complaint pertaining Rivello is unclear as to whether Williams asserts that Rivello participated in violating his rights or had knowledge of and acquiesced in any subordinates' violations of his rights. These pleading failures warrant dismissal of Williams's Section 1983 individual-capacity claim against Rivello.

### 5. State-Law Claims

Even though Williams purports to use the FTCA to assert state-law tort claims against Defendants, it is possible that he attempts to proceed on state-law tort claims independent of the FTCA. To the extent that Williams attempts to assert state-law tort claims, the Court declines to exercise supplemental jurisdiction over these state-law claims because the Court has dismissed his federal claims. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if-- . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . . .").

> As the Supreme Court instructs:
>
> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.

See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726–27 (1966). Here, the Court finds no basis to retain supplemental jurisdiction over any remaining state-law claims.

The Court also notes that there does not appear to be an independent basis for subject-matter jurisdiction over any state-law claims under the diversity jurisdiction statute, 28 U.S.C. § 1332, which grants a district court subject-matter jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." See 28 U.S.C. § 1332(a)(1). Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" See Lincoln Ben. Life Co. v. AEI Life, LLC, 800 F.3d 99, 104 (3d Cir. 2015) (quoting Lincoln Prop. Co. v. Roche, 546 U.S. 81, 89 (2005) and Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).

For purposes of determining whether parties are completely diverse, an individual is a citizen of the state where the individual is domiciled, meaning the state where the individual is physically present and intends to remain. See Washington v. Hovensa LLC, 652 F.3d 340, 344 (3d Cir. 2011) ("[D]omicile is established by an objective physical presence in the state or territory coupled with a subjective intention to remain there indefinitely." (citation omitted)). In

this case, Williams alleges only that he is incarcerated in Pennsylvania and Defendants work at, or are located at, SCI Huntingdon in Pennsylvania.[6] (Doc. No. 1 at 1, 2.) Therefore, at least based on the allegations in the complaint, the Court cannot conclude that the parties are completely diverse for purposes of section 1332(a).

Assuming, arguendo that the Court had diversity jurisdiction over Williams's state-law claims or decided to retain supplemental jurisdiction over these claims, the Court would likely dismiss the claims. For instance, Williams attempts to assert an "intentional" tort claim. (Doc. No. 1 at 5.) While it is unclear which type of intentional tort claim Williams refers to in his complaint, sovereign immunity would bar any intentional tort claims against Defendants. See 1 Pa. C.S. § 2310 ("Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity."). The Commonwealth of Pennsylvania has not waived its sovereign immunity from intentional torts. See Wicker v. Shannon, No. 09-cv-01629, 2010 WL 3812351, at *9 (M.D. Pa. Sept. 21, 2010) ("The Pennsylvania legislature has not chosen to waive this immunity for intentional torts." (citing La Frankie v. Miklich, 618 A.2d 1145, 1149 (Pa.

---

[6] Although Williams is currently incarcerated at SCI Huntingdon, his domicile "before his imprisonment presumptively remains his domicile during his imprisonment. That presumption, however, may be rebutted by showing a bona fide intent to remain in the state of incarceration on release." See Pierro v. Kugel, 386 F. App'x 308, 309 (3d Cir. 2010) (unpublished) (citations omitted); see also Robinson v. Temple Univ. Health Servs., 506 F. App'x 112, 115 (3d Cir. 2012) (unpublished) (explaining that "[t]he traditional view is that a prisoner remains a citizen of the state of which he was a citizen before his imprisonment," and that other circuits "follow a rebuttable presumption model; those courts presume that a prisoner does not change his domicile by being incarcerated in a new state, but they permit him to rebut that presumption").

15

Commw. Ct. 1992))); see also 42 Pa. C.S. § 8522 (setting forth limited exceptions to governmental immunity).

Regarding Williams's negligence claims, his allegations do not appear to fall within one of the limited exceptions to sovereign immunity Pennsylvania's General Assembly has recognized. See 42 Pa. C.S. § 8522(b) (waiving immunity only in cases of: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways, and sidewalks; (5) potholes and other dangerous conditions; (7) care, custody or control of animals; (8) National Guard activities; and (9) toxoids and vaccines); Tibbens v. Snyder, No. 18-cv-02112, 2020 WL 5372097, at *5 (M.D. Pa. June 24, 2020) (explaining that sovereign immunity "shields Commonwealth employees from liability when their actions: (1) cannot fit into one of the nine statutory exceptions in § 8522; (2) are not negligent; and (3) occurred when acting within the scope of his or her employment" (citing Kintzel v. Kleeman, 965 F. Supp. 2d 601, 606 (M.D. Pa. 2013), report and recommendation adopted, 2020 WL 5370024 (M.D. Pa. Sept. 8, 2020))). Concerning Williams's "strict liability" claims, strict liability is normally associated with product liability torts which revolve around a defective product. See McPeak v. Direct Outdoor Prods., LLC, No. 19-cv-03719, 2022 WL 4369966, at *3 (E.D. Pa. Sept. 20, 2022) ("Pennsylvania law . . . follows section 402A of the Restatement (Second) of Torts to determine whether a product is defective under a strict liability theory which may be shown in two ways: proof of a manufacturing defect or proof of a design defect." (citations omitted)). Considering that a "stinger bucket" appears to be an inmate-manufactured product, it is unclear how a products liability claim would lie against Defendants here.

### C. Leave to Amend

Having determined that Williams's claims against Defendants are subject to dismissal, the Court must determine whether to grant him leave to file an amended complaint. Courts should generally give leave to amend but may dismiss a complaint with prejudice where leave to amend would be inequitable or futile. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); see also Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) ("When a plaintiff does *not* seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [they have] leave to amend within a set period of time, unless amendment would be inequitable or futile."). "In determining whether [amendment] would be futile, the district court applies the same standard of legal sufficiency as [it] applies under Fed. R. Civ. P. 12(b)(6)." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).

Based on the analysis above, the Court will not grant Williams leave to file an amended complaint as to his FTCA claims, Section 1983 claim against the Medical Department, and Section 1983 claim against Rivello in his official capacity because any amendment would be futile. The Court will dismiss those claims without prejudice.[7] On the other hand, the Court will permit Williams the opportunity to amend his complaint concerning his Section 1983 individual-capacity claim against Rivello. As for Williams's state-law claims, since the Court has declined to exercise jurisdiction over them, the Court expresses no opinion as to whether Williams should

---

[7] Claims barred by the Eleventh Amendment must be dismissed without prejudice. See Merritts v. Richards, 62 F.4th 764, 772 (3d Cir. 2023).

17

reassert them should he decide to file an amended complaint. Nevertheless, if Williams chooses to reassert those claims in an amended complaint, he should be mindful of the Court's concerns regarding those claims as explained in this Memorandum.

IV. **CONCLUSION**

For the reasons discussed above, the Court will grant the IFP Application and dismiss the complaint without prejudice to Williams filing an amended complaint concerning only his Section 1983 individual-capacity claim against Rivello or any state-law claims. An appropriate Order follows.[8]

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

---

[8] The Order will provide additional information to Williams about the filing of an amended complaint.